AO 91 (Rev. 11/11)  Criminal Complaint

EC/JMR

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 2:23-mj-208 |
| Terrael Alexander Alls | ) | |
| 1803 Alkire Meadows | ) | |
| Columbus, Ohio 43228 | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _December 2021 - April 2022_ in the county of _Franklin_ in the _Southern_ District of _Ohio_, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1591(a)(1) and (b) | Sex Trafficking by Means of Force, Fraud, or Coercion |

This criminal complaint is based on these facts:

See attached affidavit incorporated herein by reference

☑ Continued on the attached sheet.

_____  #95
*Complainant's signature*

HSI TFO Aaron Dennis
*Printed name and title*

Sworn to before me and signed in my presence.

Date: March 29, 2023

City and state: _____ Columbus, Ohio

Kimberly A. Jolson
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **In the matter of:** | : | |
| | : | |
| **United States of America** | : | **Case No.:**  2:23-mj-208 |
| **v.** | : | |
| | : | **Magistrate Judge** |
| **Terrael Alexander Alls** | : | |
| **1803 Alkire Meadows** | : | |
| **Columbus, Ohio 43228** | : | |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Aaron Dennis, Task Force Agent, United States Department of Homeland Security Investigations (HSI), being duly sworn, depose and state that:

## INTRODUCTION

1. I make this affidavit in support of a criminal complaint to arrest Terrael A. **ALLS** for a violation of Title 18 United States Code 1591(a)(1) and (b)(1) – sex trafficking by means of force, threats, fraud, or coercion.  Since this affidavit is being submitted for the limited purpose of securing an arrest warrant, I did not include each and every fact known concerning this investigation.  I did not withhold any information or evidence that would negate probable case.  I set forth only the facts that are believed to be necessary to establish probable cause that **ALLS** committed the violation listed above.

2. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

3. I am a Columbus Ohio Police Officer (Columbus Police Department) currently assigned as a Task Force Officer (TFO) with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI) and The Central Ohio Human Trafficking Task Force (COHTTF). The Columbus Division of Police (CPD) has employed me since 1999.  My primary responsibilities as a TFO are to investigate Human Trafficking crimes. During my tenure as a Columbus Police Officer/Detective/Task Force Agent, I have worked multiple investigations regarding Narcotics, Prostitution and Human Trafficking offenses.

1

4. I also have specialized training in the area of Human Trafficking, Pimp Controlled Prostitution, Organized Prostitution, Child Prostitution Rings, Narcotics Trafficking and Money Laundering. I have participated in the execution of search warrants and arrests related to the above-referenced offenses. By virtue of my experience and training, your affiant is familiar with money laundering techniques utilized by individuals involved in illegal activities, such a narcotics and human trafficking. Throughout this affidavit, reference to "investigators" specifically refers to criminal investigators.

5. I have participated in several drug trafficking, money laundering, and organized crime investigations that have resulted in the arrest of numerous members of several different domestic drug trafficking organizations as well as the seizure of currency, assets, and controlled substance related to these investigations. Some of these investigations used judicially authorized electronic surveillance as an investigative technique and I have participated in investigations in support of those judicially authorized electronic surveillance operations. Additionally, I have testified on numerous occasions in grand jury proceedings, procedural hearings, and in criminal trials related to the prosecution of individuals involved in sex trafficking offenses.

6. Through instruction, training, and participation in investigations, I have become familiar with the manner and methods by which narcotics traffickers and sex traffickers conduct their illegal business and the language and terms that are used to disguise conversations about their illegal activities. Moreover, narcotics traffickers and sex traffickers frequently use telephone communications to further their illegal activities by, among other things, remaining in constant communication with one another, either verbally or via text messaging.

7. I am also aware that drug traffickers and sex trafficking organizations utilize texting applications to generate multiple phone numbers, at no cost, to communicate. The texting applications can aide to protect trafficker's identities as well. I am also aware that drug traffickers and sex traffickers often utilize more than one communication device at one time in order to facilitate their drug illegal activities.

8. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from oral and written reports by other law enforcement officers, physical and video surveillance, interviews, subpoenaed and public records, database checks, telephone toll analysis, and information gained through my training and experience.

## PROBABLE CAUSE

9. On February 1, 2022, the Central Ohio Human Trafficking Task Force (COHTTF) received an email tip from an emergency operator with the Columbus Division of Police (CPD). The tip referenced a call that had been received from a female (herein after referred to as Witness #1) that had traveled to the Columbus area over the prior weekend. Witness #1 indicated she had been a guest at the Red Roof Inn located at 5001 Renner Road in

Columbus, OH 43228 and, while there, was approached by an unknown male who handed her a business card and told her to call him. Witness #1 noted the card was for advertising a modeling agency/business but had concerns there was a possible nexus to human trafficking and wanted to report it to CPD.

10. On February 3, 2022, COHTTF Investigators contacted Witness #1 who confirmed the above tip, explaining she was approached by a male, who offered her the business card and said he was looking for new models. After the male handed Witness #1 the business card, he walked off. Witness #1 informed law enforcement the business card had "*Elite Diamond Studios*" on the front, along with the phone number (740) 542-1103. The back of the business card also listed the following Gmail address: elitediamond44@gmail.com.

11. Further inquiry via subpoenaed phone records revealed the subscriber's name for the (740) 542-1103 phone number was a female who law enforcement later identified as a victim in this investigation (and who is hereinafter referred to as Victim #1). Through further open-source searches, investigators learned the same (740) 542-1103 phone number was assigned to a CashApp account named "$elitediamondstu" and sex escort advertisements.

12. A subpoena was issued for call records for the (740) 542-1103 number and a review of the returns revealed telephone number (614) 230-4805 exchanged approximately 76 calls/texts with (740) 542-1103 between December 11, 2021 and January 31, 2022. The (614) 230-4805 telephone number was found to be attributed to an individual by the name of **Terrael ALLS** (DOB: 11/07/1994) via a search of law enforcement databases. **ALLS** had also utilized the same phone number to make a call to CPD in February of 2021. The (614) 230-4805 phone number was also linked to several sex escort advertisements and a male black pictured in one of the advertisements and matched the description of **ALLS.**

13. Investigators learned a sex trafficking lead had been received by the Delaware County Sheriff's Office and **ALLS**, who went by the nickname "Rell," had been identified as the possible target subject. On March 29, 2022, an interview was conducted with the source of the information, herein after referred to as Witness #2, while he/she was incarcerated in the Delaware County Jail. Witness #2 informed Delaware County law enforcement he/she was familiar with both Victim #1 and **ALLS** and that **ALLS** was trafficking women.

14. On November 4, 2022, COHTTF Investigators re-interviewed Witness #2, who was still incarcerated. Witness #2 confirmed he/she was familiar with **ALLS** and provided information mostly pertaining to Victim #1, confirming Victim #1 was physically harmed by **ALLS** and coerced with drugs by **ALLS**. Witness #2 stated he/she saw injuries on Victim #1, including marks on her arms and bruises on her shoulders. Witness #2 recalled having a disagreement with **ALLS** about Victim #1 and **ALLS** told him/her not to threaten "the merchandise," referring to Victim #1.

3

15. Further investigation into **ALLS** revealed in April 2022, Victim #1 was arrested at Red Roof Inn in Dublin, Ohio on an outstanding warrant. **ALLS** was on scene at the time. Upon her arrest, Victim #1 disclosed to police officers that **ALLS** was her pimp and that he recruits women under the guise of modeling for him as a photographer. She further reported **ALLS** limits her movements, gives the women he recruits fentanyl and that she had never engaged in prostitution until **ALLS.**

16. Victim #1 consented to a search and extraction of her cellphone and agreed to speak further with investigators. In summary, Victim #1 explained she was introduced to **ALLS**, whom she identified by name and photograph, and he introduced her to prostitution/escorting. Victim #1 stated **ALLS** got her hooked back on drugs again, specifically fentanyl and methamphetamine. Victim #1 reported **ALLS** would post ads for prostitution and pornographic content, including images and videos on multiple escort sites. Victim #1 reported **ALLS** would try to make $1,000 a day and **ALLS** received all the proceeds in the seven (7) months she worked with him. Victim #1 recalled having a debt she owed to **ALLS** and noted he would keep track of that debt. Victim #1 noted in response to investigators questions that she never worked enough or made enough to get a day off. Your affiant knows from training and experience that traffickers often use debt, typically fictional debt, as a means of controlling victims.

17. Victim #1 stated **ALLS** posed as the female whom the customer was planning to meet with. **ALLS** would set up the "dates," a term your affiant knows is often used to describe the exchange of sexual acts for money or other things of value. Victim #1 explained that a customer would text the phone number from her advertisement to set up a date and/or ask for videos containing sexual content. Law enforcement obtained records for **ALLS'** Facebook accounts and recovered videos of Victim #1 engaged in masturbation and sex acts, including sex acts with **ALLS.**

18. Victim #1 reported the clients would use CashApp to pay for the content and that the videos were sent either through text messages or email. Victim #1 reported **ALLS** had multiple CashApp names including DiscordC and EliteDiamondStudios, which were connected to a CashApp card. Investigators obtained records from CashApp for both Victim #1 and **ALLS**, which confirmed Victim #1 had used the app to transfer $11,677 to **ALLS** over an approximate 5-month period of time. The records from CashApp also contained a request for "$100 or blood" from **ALLS** to Victim #1, followed by another note in which **ALLS** threatened Victim #1 by indicating "I'm looking at you."

19. Victim #1 stated she is fearful of **ALLS**, noting that he frequently physically abused her, carried a firearm, threatened to pistol-whip her, and had fired a gun near her head in the past. During the investigation, your affiant learned that in or about February 2022, **ALLS** had rented a hotel room and the hotel cleaning crew had located a firearm in that room. Hotel management at the hotel had photographed the firearm. Law enforcement obtained that photograph and Victim #1 positively identified the firearm in the photo as the one **ALLS** carried and threatened her with. Investigators were also able to locate a photo of **ALLS** posing with the same firearm on his social media.

20. Victim #1 reported **ALLS** gave her whatever drugs she needed to stay "well," which your affiant knows to be a means of providing another individual with enough drugs to that they do not suffer the effects of drug withdrawal. Victim #1 further explained all the money she received from the clients went back to **ALLS** and, in return, he would give her drugs to keep her well. Victim #1 reported both she and **ALLS** used fentanyl and meth (in that order) so she could stay awake to see more clients.

21. Victim #1 also informed investigators **ALLS** receives his mail at his grandmother's home. Further investigation revealed that specific address was tied to numerous email accounts used by **ALLS** to promote sex services on corresponding sex escort advertisements. Victim #1 also reported **ALLS** has eight (8) different emails that correspond with eight (8) different TextNow numbers, which were each assigned women working with **ALLS** at any given time[1].

22. Investigators performed a forensic extraction of Victim #1's phone. This extraction revealed photographs of bruises to Victim #1's face and thigh and messages from **ALLS** regarding the sexual activity for hire and her monetary debt to him.

23. As the investigation continued, law enforcement identified an additional victim, hereinafter referred to as Victim #7 for purposes of this affidavit[2]. On January 31, 2023, investigators interviewed Victim #7 who reported she was familiar with **ALLS** and he contacted her in 2022 via Facebook with the pretense of modeling in "adult entertainment." Victim #7 said she knew **ALLS** as "Ace Finesse" or "Ace" and positively identified **ALLS** in a photograph. Victim #7 reported she did not initially realize the business involved prostitution and she had never engaged in prostitution prior to meeting **ALLS.** Victim #7 explained she did eventually engage in prostitution under the direction of **ALLS** and he kept all the proceeds, typically collected via Cash App. Victim #7 reported **ALLS** set up most of the dates and did most of the communication with customers. Victim #7 noted most of **ALLS'** customers seemed to be regular clientele.

24. Victim #7 was aware **ALLS** used online platforms to advertise her and identified herself in a sex escort advertisement created by **ALLS.** Victim #7 explained she had been "clean" prior to meeting up with **ALLS**, who then provided her with "meth" and "weed." Victim #7 explained she never paid **ALLS** for the drugs, he instead just took it out of the proceeds she would make. Victim #7 noted **ALLS** would tell her she would "need to push content" because he "didn't buy this for nothing," referring to the drugs. Victim #7 stated **ALLS**

---

[1] Throughout the course of the investigation, your affiant served legal process on TextNow and identified a total of nine different TextNow telephone numbers attributed to **ALLS**, the majority of which corroborated the solicitation of Victim #1 in acts of prostitution.

[2] Numerous victims of **ALLS** were identified through the course of the investigation. For purposes of this criminal complaint, only two are mentioned: Victim #1 and Victim #7.

would use the drugs against her, knowing she would want to get high, to get what he wanted.

25. Victim #7 explained the night before she left **ALLS,** he threatened physical violence, pushed her around and "got a little rough with me." Victim #7 further explained **ALLS** became mad about money and told her if she didn't come up with "$100 for the room rent" she was going to be kicked out and "no longer a partner" with him. **ALLS** also told Victim #7 "If you don't give me my drugs and shit I'm going to beat the fuck out of you." These threats eventually led Victim #7 to call police for assistance who responded to the scene. Officers were wearing body cameras which captured **ALLS** in the background and Victim #7 in a state of duress. Your affiant obtained the CPD incident report that was generated as a result of this call. Officers noted in the report Victim #7 was "scared" and made allegations of sex trafficking.

26. Further investigation revealed escort advertisements depicting Victim #7 had been posted on the website Megapersonals. TextNow legal process and search warrant returns also indicated that on or about April 27, 2022, Victim #7 was referred to as a new model working for **ALLS** and given a unique nickname by him. In addition, search returns from Facebook and Snapchat revealed Victim #7 created pornographic content with **ALLS** or for **ALLS.** CashApp returns that were obtained throughout the course of the investigation also revealed **ALLS** received the money from that content in addition to the money Victim #7 made from the sex acts she engaged in with others.

## CONCLUSION

27. Based upon the above information, your affiant submits that there is probable cause to believe that Terrael A. **ALLS** has committed offenses in violation of 18 U.S.C. Section 1591(a)(1) and (b)(1) – sex trafficking by means of force, threats, fraud, or coercion. Therefore, your affiant respectfully requests this court issue a criminal complaint and arrest warrant.

Aaron Dennis, Task Force Agent
Homeland Security Investigations

Sworn to and subscribed before me this 29th day of March, 2023.

Kimberly A. Jolson
United States Magistrate Judge

5